OPINION *Page 2 
{¶ 1} This is the consolidated appeal of a mother and father, who are challenging the juvenile court's decision terminating their respective parental rights, and granting Franklin County Children Services' ("FCCS") motion for permanent custody of their child. Because FCCS demonstrated by clear and convincing evidence that permanent court custody is in the child's best interests, we affirm the juvenile court's ruling.
 {¶ 2} S.D. was born in June 2006. Her mother, K.R., tested positive for cocaine at the time of birth. K.R. subsequently was incarcerated for a period of time, including the time the trial court decided that permanent custody of S.D. should be placed with FCCS.
 {¶ 3} K.D. is S.D.'s biological father. He had seen S.D. twice during the first two years of her life. On the date of the hearing at which permanent custody was granted, K.D. was serving a prison sentence for domestic violence. He is not due for release from prison until the fall of 2010.
 {¶ 4} Both K.D. and K.R. have appealed from the grant of permanent custody.
 {¶ 5} Counsel for K.D. has filed a brief and assigns four errors for our consideration:
 [I.] THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR PERMANENT CUSTODY OF S.D. WHERE THE FATHER WAS DENIED SERVICES BY [FCCS].
 [II] THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR PERMANENT CUSTODY OF S.D. WHERE THE CHILD COULD BE PLACED WITH A PARENT WITHIN A REASONABLE TIME.
 [III] THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR PERMANENT CUSTODY OF S.D. WHERE THE EVIDENCE FAILED TO ESTABLISH THAT THE CHILD WAS ABANDONED. *Page 3 
 [IV] THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR PERMANENT CUSTODY OF S.D. WHERE THE FATHER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 6} Counsel for K.R. has filed a brief assigning a single error for our consideration:
 THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY TO [FCCS] AFTER THE CASEWORKER ADMITTED TO BAD FAITH IN FAILING TO EXPLORE SUITABLE RELATIVE PLACEMENTS.
 {¶ 7} We address K.D.'s assignments of error first. In the first assignment of error, counsel asserts that K.D. was denied "services" by FCCS — i.e., that FCCS refused to make reasonable efforts to reunify K.D. with his daughter. We consider this assignment of error together with the second assignment of error, which alleges that the trial court erred by finding that the child could not be placed with the father within a reasonable time.
 {¶ 8} The right to parent one's children, and maintain and pursue intimate familial associations are fundamental rights guaranteed by the Due Process Clause of the United States Constitution. See, e.g.,Troxel v. Granville (2000), 530 U.S. 57, 66, 120 S.Ct. 2054; Moore v.East Cleveland, Ohio (1977), 431 U.S. 494, 503, 97 S.Ct. 1932; see alsoIn re Hayes (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680; In reMurray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169; In re J.W., 171 Ohio App.3d 248, 251-253, 2007-Ohio-2007, 870 N.E.2d 245. In instances of child abuse or neglect, however, the state has broad authority to intervene, to safeguard the best interests of the child. In reC.F., 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28 (citing R.C. 2151.01). When the *Page 4 
state intervenes to protect a child's health or safety, "`[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called "reasonable efforts."'" Id. (quoting Will L. Crossley, Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation [2003], 12 B.U. Pub. Int. L.J. 259, 260).
 {¶ 9} In Ohio, permanent court custody, or PCC, is the statutory process by which children are taken away from their natural or biological parents, and made wards of the state. Indeed, the Supreme Court of Ohio analogizes the termination of parental rights as "the family law equivalent of the death penalty." In re J.W., at ¶ 13 (quoting In re Hayes, at 48). For this reason, the legislature enacted a comprehensive statutory scheme governing PCC. See R.C. 2151.413 et seq.
 {¶ 10} Under this scheme, before a court may grant a petition for PCC, the court must hold a hearing to determine whether the state has clear and convincing evidence that permanent custody is in the best interests of the child. In re J.W., ¶ 16; R.C. 2151.414(A)(1). The "best interests" criteria are codified at R.C. 2151.414(D)(1). The court must also find that one of the circumstances in R.C. 2151.414(B) applies. Then the court may grant the PCC motion.
 {¶ 11} The father is arguing that FCCS failed to make efforts to reunify him with his daughter. We disagree.
 {¶ 12} As a preliminary note, the State points out that the father's attorney failed to include a table of authorities in her brief, and failed to cite any case law or relevant legal authority to support her arguments. The state urges us to dismiss the father's appeal on the ground that he has not met the burden of demonstrating error, under App. R. 16(A)(7). *Page 5 
Although we agree with the state's argument, because of the constitutionally guaranteed fundamental rights at issue, we are inclined to address the father's appeal on its merits.
 {¶ 13} K.D. had minimal contact with his daughter before he went to prison for an offense of violence. Visitation at a prison is not such that a parent who is not bonded to a child can become bonded. Further, K.D.'s place of incarceration had to have changed repeatedly from the Franklin County Corrections System to the Orient Corrections Reception Center, to Southeast Correctional Institution. The Orient Corrections Reception Center allows minimal visitation while inmates adjust to their incarceration.
 {¶ 14} Under the circumstances, K.D.'s criminal conduct had made it difficult, if not impossible, for FCCS to provide meaningful services. K.D. was to be incarcerated for approximately 18 more months. And his history of domestic violence made him a questionable placement, even if he had completed his incarceration.
 {¶ 15} With regard to the child's mother, K.R. had a lengthy history of drug problems, including the use of cocaine while she was pregnant with the child. She missed a number of drug screenings before she was incarcerated, and had shown no propensity to recover from her drug addiction while S.D. was alive. She was not a viable potential placement on the date of hearing, nor will she be at any time in the reasonably foreseeable future.
 {¶ 16} We cannot fault FCCS or assign error to the trial court under the circumstances. K.D.'s first and second assignments of error are overruled.
 {¶ 17} In K.D.'s third assignment of error, counsel questions whether S.D. was truly abandoned by her biological parents. In one sense, K.D. and K.R. did not abandon S.D. They did not literally choose to be separated from S.D. Instead, they engaged in *Page 6 
conduct which caused them to be utterly incapable of caring for a small child, let alone a child with special needs. Both parents willfully made themselves physically unavailable to be in S.D.'s presence as a result of illegal activity. The trial court found as an alternative finding that such parental activity and its resulting incarceration constitute abandonment.
 {¶ 18} K.D.'s third assignment of error is overruled.
 {¶ 19} In the fourth assigned error, the father argues that trial counsel was ineffective, on the basis that counsel should have subpoenaed K.D. from prison, so he could testify at the hearing.
 {¶ 20} We review ineffective assistance of counsel claims using the United States Supreme Court's test announced in Strickland v.Washington (1984), 466 U.S. 668, 691-692, 104 S.Ct. 2052. UnderStrickland, ineffective assistance of counsel means that (1) counsel made an error that was professionally unreasonable, and that (2) but for that error, the result or verdict would have been different. Id. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.
 {¶ 21} In this case, we cannot know what K.D. would have said, had counsel subpoenaed him from prison, but his testimony risked making a bad situation even worse. An extended discourse on K.D.'s history of domestic violence and drug abuse was at least probable. Therefore, it was reasonable for K.D.'s lawyer to make a tactical decision not to subpoena K.D. We certainly cannot say that the outcome of the permanent placement hearing would have been different if K.D. had testified. Without a probability of a different outcome, the standards ofStrickland for ineffective assistance of counsel are not met. K.D.'s fourth assignment of error is overruled. *Page 7 
 {¶ 22} Turning to the mother's sole assignment of error, which asserts that the trial court should not have granted permanent custody of S.D. to FCCS without requiring a more diligent effort to find a potential placement with a relative.
 {¶ 23} Because the trial court is vested with broad discretion regarding placement of a child, we review this decision for abuse of discretion. See, e.g., In re B.K. Fayette App. No. CA2006-03-011,2006-Ohio-4424 (citing In re Keaton, Ross App. No. 04CA2785,2004-Ohio-6210, ¶ 61-62; In re Hilyard, Vinton App. No. 05CA600,2006-Ohio-1965, ¶ 43). An abuse of discretion is more than an error in law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
 {¶ 24} As counsel for K.R. correctly asserts in his brief, the legislature has indicated that after the biological parents have been demonstrated to be incapable of caring for a child, maternal and paternal relatives should be considered next. See, e.g., R.C. 2151.412(G). At the date of the final hearing, no relative had presented himself or herself as a potential placement. The caseworkers could have done more to investigate placement, but their failures to independently search for potential homes for S.D. different from the foster homes (where S.D. was receiving good care) does not mean that they did not protect S.D.'s best interests.
 {¶ 25} Ideally, more should have been done, and the trial court did, in fact, express dissatisfaction with the efforts toward placement with a relative. The child, however, received good care, and did not face the risks that were encountered when relative placement was attempted briefly.
 {¶ 26} We agree with the Twelfth District Court of Appeals, when it wrote: *Page 8 
 * * * [W]e do not find that the juvenile court abused its discretion in not considering relative placement, particularly when no relative even provided juvenile court with that option. The record indicates that the juvenile court considered the evidence presented and found by clear and convincing evidence that Children's Services should be granted permanent custody of these children. * * *
In re B.K., at ¶ 28.
 {¶ 27} Likewise, we cannot say that the trial court abused its discretion with regard to the issue of placing S.D. with a relative. The sole assignment of error presented on behalf of K.R. is overruled.
 {¶ 28} All the assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
BROWN and McGRATH, JJ., concur. *Page 1