[Cite as *In re NAP*, 2013-Ohio-689.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

IN THE MATTER OF: :
:
    N.A.P. :
    and :
    M.D.P. : Case No.    12CA30
:              12CA31
:
: <u>DECISION AND JUDGMENT</u>
: <u>ENTRY</u>
:
: **Released: 02/13/13**

_____

<u>APPEARANCES:</u>

Dennis L. Sipe, BUELL & SIPE CO., L.P.A., Marietta, Ohio, for Appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Kevin A. Rings, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for Appellee.

_____

McFarland, P. J.

{¶1} R.P., the natural father of N.A.P. and M.D.P., appeals the trial court's judgment that awarded Washington County Children Services Board (WCCS) permanent custody of his two children. He asserts that the trial court should have continued the permanent custody hearing in order to permit him an opportunity to reunite with his children. Because the permanent custody hearing already had been delayed three times and because approximately ten months had elapsed between

the date WCCS filed its permanent custody motion and the date of the thrice rescheduled hearing, the trial court did not abuse its discretion by overruling appellant's motion to continue.

{¶2} Appellant additionally argues that the trial court erred by determining that awarding WCCS would serve the children's best interests. Ample competent and credible evidence supports the trial court's decision that awarding WCCS permanent custody of the children would serve their best interests. The children had been in WCCS's temporary custody for over two years at the time of the permanent custody hearing and had absolutely no physical contact with appellant during that time. The children had bonded with the foster family and the foster family is willing to adopt the children. Appellant had not been released from confinement at the time of the permanent custody hearing and thus could not provide the children with a legally secure permanent placement. Additionally, WCCS was unable to find a relative who could provide a legally secure permanent placement. Appellant's parents were considered but deemed inappropriate. Based upon all of the evidence presented at the permanent custody hearing, the trial court reasonably could have determined that placing the children in WCCS's permanent custody and allowing them to be adopted would further their best interests and that subjecting them to an uncertain future with appellant would not further their best interests.

{¶3} Appellant next asserts that his trial counsel rendered ineffective assistance of counsel by failing to advise appellant's parents that they should seek custody of the children and by failing to recognize that the trial court did not need to consider relative placement before awarding WCCS permanent custody. Because appellant cannot show that either alleged deficiency prejudiced the outcome of the case, he cannot demonstrate ineffective assistance of counsel. Accordingly, we overrule appellant's three assignments of error and affirm the trial court's judgment.

## I. FACTS

{¶4} On September 11, 2009, WCCS filed a complaint that alleged three-year old N.A.P. and almost two-year old M.D.P. to be dependent, neglected, and abused children and that requested temporary custody of the children. At an initial hearing, appellant waived his right to counsel.

{¶5} At the December 1, 2009 adjudicatory and agreed disposition hearing, appellant appeared pro se, having previously waived counsel. Appellant and the children's mother admitted that the children are dependent children. The court dismissed the abuse and neglect allegations. Appellant and the children's mother agreed to continue the children in WCCS's temporary custody.

{¶6} On December 9, 2009, the court adjudicated the children dependent and awarded WCCS temporary custody. The court found that WCCS used reasonable

efforts to prevent the children's continued removal "but * * * due to [appellant's] upcoming four-year prison sentence * * * it is in the best interest of the child[ren] to remain in" WCCS's temporary custody.

{¶7} On March 3, 2011, WCCS filed a permanent custody motion. WCCS alleged that the children had been in its temporary custody continuously since December 2009. The court initially set a hearing for May 31, 2011. The mother subsequently requested the court to extend the temporary custody order for an additional six months in order to allow her to reunify with her children. The court then continued the permanent custody hearing until August 31, 2011. On August 30, 2011, the mother requested another continuance, and the court continued the hearing until November 3, 2011.

{¶8} On October 12, 2011, appellant requested counsel. On October 26, 2011, the court appointed counsel for appellant and continued the hearing until January 4, 2012.

{¶9} Appellant later filed a motion for custody of the children and requested the court to continue the case so that he may have a chance to be reunified with the children. He alleged that he will be released from SEPTA less than one week after the January 4, 2012 hearing date.

{¶10} On December 7, 2011, the court denied appellant's motion to continue. The court noted that the case had been continued three previous times

and that under R.C. 2151.414, the permanent custody motion should be heard within 200 days. The court determined that "the parties have had sufficient time to attempt to work the case plan and that no additional continuances should be granted."

{¶11} At the permanent custody hearing, WCCS caseworker Stephanie Amrine stated that appellant was unable to participate in the case plan due to his incarceration. She explained that appellant sent tape recordings and cards to the children while incarcerated. Amrine testified that WCCS initially attempted to place the children with the paternal grandparents, but the grandmother had mental health issues and her psychologist advised that "she was not stable enough to have children in the home long term." She had informed the grandparents that they were not an acceptable placement option due to the grandmother's mental health issues. Amrine stated that she continued "to follow-up" on the grandparents' status throughout her involvement in the case.

{¶12} WCCS caseworker Sally Ferguson testified that appellant will remain incarcerated until January 14 or 15, 2012, "and these children have been in foster care for too long to really keep them in foster care much longer, to wait for him to get out of jail and show that he can be good in society."

{¶13} Appellant testified that he has served about two and one-half years of a four-year sentence. He admitted that if he violates the terms of his release, he could return to prison to serve the remainder of his sentence.

{¶14} On May 21, 2012, appellant filed a motion for visitation. He alleged that he has been released from SEPTA and gainfully employed.

{¶15} On July 19, 2012, appellant filed a motion to dismiss the case because seven and one-half months had elapsed since the hearing date and the court had not issued a decision.

{¶16} On July 20, 2012, the trial court granted WCCS permanent custody of the children. The court found that R.C. 2151.414(B)(1)(d) applied: "[T]he child[ren] had been out of the mother's home and in the temporary custody of the Agency for 17 actual months at the time the Agency filed for permanent custody. Since the beginning of the case until the date of the permanency hearing the child[ren] ha[ve] been in the temporary custody of the Agency for 27 months." The court determined that the foster family is meeting all of the children's needs and that the children share a bond with the foster family. The court further found that neither parent can provide the children with "stability and permanency" and that "[p]ermanency and stability can not [sic] be achieved without a grant of permanent custody." The court observed that the foster parents are willing to adopt the child. The court thus terminated appellant's parental rights.

## II.  ASSIGNMENTS OF ERROR

{¶17} Appellant timely appealed the trial court's judgment and raises three

assignments of error:

First Assignment of Error:

The trial court abused its discretion when it overruled the Father's
motions for a continuance.

Second Assignment of Error:

The trial court erred when it determined by clear and convincing
evidence that it was in the best interests of the Children for Children
Services to be awarded permanent custody.

Third Assignment of Error:

The acts and omissions of counsel for the Father deprived him of the
effective assistance of counsel.

## III.  MOTION TO CONTINUE

{¶18} In his first assignment of error, appellant asserts that the trial court

abused its discretion when it overruled his motion to continue the January 4, 2012

dispositional hearing.

{¶19} Juv.R. 23 states that "continuances shall be granted only when

imperative to secure fair treatment for the parties."  A trial court possesses broad

discretion when ruling on a motion to continue a juvenile proceeding. *In re*

*K.M.D.*, 4th Dist. No. 11CA3289, 2012-Ohio-755, 2012 WL 605593, ¶49.  Thus,

we will not overturn a trial court's ruling regarding a motion to continue unless the

court abused its discretion. *Id.* "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Furthermore, the abuse of discretion standard does not permit a reviewing court to substitute its judgment for that of the trial court. *Berk v. Matthews,* 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1993).

{¶20} When an appellate court reviews a trial court's ruling on a motion to continue, the court """appl[ies] a balancing test, thereby weighing the trial court's interest in controlling its own docket, including the efficient dispensation of justice, versus the potential prejudice to the moving party.""" *K.M.D.* at ¶50, quoting *Foley v. Foley,* 10th Dist. Nos. 05AP–242 & 05AP–463, 2006–Ohio–946, ¶16, quoting *Fiocca v. Fiocca,* 10th Dist. No. 04AP–962, 2005–Ohio–2199, ¶7. When a trial court considers a motion to continue, it should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each

case.'"  *K.M.D.* at ¶51, quoting *State v. Unger,* 67 Ohio St.2d 65, 67–68, 423

N.E.2d 1078 (1981).

{¶21} In the case at bar, the trial court did not abuse its discretion by

denying appellant's motion to continue the permanent custody hearing.  The court

rationally could have determined that continuing the hearing for an unspecified

period of time in order to allow appellant the opportunity to reunite with his

children would not be in the children's best interests when they already had been in

WCCS's temporary custody for over two years at the time of the permanent

custody hearing.  Appellant did not demonstrate how long the permanent custody

hearing would need to be delayed in order to provide him an opportunity to reunite

with the children.  Moreover, the record is far from clear that the children would

have been returned to appellant's custody within a reasonable time.  Appellant

claims that he will be able to provide for the children, but he remains on probation

and faces additional prison time if he violates the terms of his release.  Thus, the

children's future with appellant would be far from certain.  Instead, continuing the

hearing to allow appellant a chance to demonstrate his ability to properly care for

the children would further delay the uncertainty during their tender years.

Additionally, appellant has been physically out of the children's lives for nearly

two and one-half years due to his incarceration.  Not only would appellant need to

demonstrate that he could provide for the children, he also would need to establish

a bond with them. The trial court reasonably could have determined that appellant would not be able to establish either within a reasonable period of time so as to justify a further delay of the permanent custody hearing. The trial court may have believed that eliminating the children's uncertainty and affording them the stability of an adoptive home would be in their best interests.

{¶22} Furthermore, by the time appellant filed his motion to continue, the hearing already had been continued three times, resulting in a seven-month delay. The children had been in WCCS's temporary custody for approximately two years when appellant filed his motion to continue. The trial court could have reasonably determined that any further delay contributing to the children's instability and lack of permanency would not further their best interest. In fact, further delaying the proceedings and subjecting the children to continued uncertainty as to whether appellant would prove to be able to reunite with them might well be detrimental to their best interests. *In re S.F.T.*, 12th Dist. Nos. CA2010-02-043, CA2010-02-044, CA2010-02-045, CA2010-02-046, 2010-Ohio-3706, 2010 WL 3159582, ¶12 (stating that "[f]urther delay in deciding * * * permanent custody motion would not be in the best interests of these children who had already been in the temporary custody * * * for a total of approximately 26 months"). *Accord In re Z.D.*, 5th Dist. No. 12CA29, 2012-Ohio-3658, ¶13, quoting *In re K.G.,* 9th Dist. Nos. 03CA0066, 03CA0067, 03CA0068, 2004–Ohio–1421, ¶23. ("Clearly, ' * * * lengthy delays

were not within the intent of the legislature when it shortened the permanent

custody time frames [under R.C. 2151.414].'"). Consequently, the trial court did

not abuse its discretion by refusing to subject the children to further continued

uncertainty. We certainly sympathize with appellant, but our sympathy for

appellant does not override the children's best interests.

{¶23} Accordingly, based upon the foregoing reasons, we overrule

appellant's first assignment of error.

## IV.  PERMANENT CUSTODY

{¶24} In his second assignment of error, appellant argues that the trial court

erred by determining that it was in the children's best interests to award appellee

permanent custody. He contends that the trial court wrongly found that he "had no

contact" with the children. Appellant points to the testimony at the permanent

custody hearing that he sent cards and audiotapes to the children and that he spoke

with them on the telephone. He further asserts that appellee did not demonstrate

that it made a reasonable effort to reunite the children with the father.

{¶25} Appellant additionally argues that the trial court failed to consider the

children's relationship with their grandparents. Appellant argues that if the court

had found that he had contact with his children and had considered the children's

relationship with their grandparents, then the court would have weighed the best

interests factors more favorably towards the parents and less favorably towards

awarding appellee permanent custody.

## A. STANDARD OF REVIEW

{¶26} Generally, an appellate court will not reverse a trial court's permanent

custody decision if some competent and credible evidence supports the judgment.

*In re Perry,* 4th Dist. Nos. 06CA648 and 06CA649, 2006–Ohio–6128, at ¶40, citing

*State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Thus, our review of

a trial court's permanent custody decision is deferential. See *In re Hilyard,* 4th

Dist. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606,

05CA607, 05CA608, 05CA609, 2006–Ohio–1965, at ¶17. Moreover, "an

appellate court should not substitute its judgment for that of the trial court when

there exists competent and credible evidence supporting the findings of fact and

conclusion of law." *Schiebel*, 55 Ohio St.3d at 74. Issues relating to the credibility

of witnesses and the weight to be given the evidence are primarily for the trier of

fact. As the court explained in *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77,

80, 461 N.E.2d 1273 (1984): "The underlying rationale of giving deference to the

findings of the trial court rests with the knowledge that the trial judge is best able

to view the witnesses and observe their demeanor, gestures and voice inflections,

and use these observations in weighing the credibility of the proffered testimony."

**{¶27}** Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); see, also, *In re Christian,* 4th Dist. No. 04CA10, 2004–Ohio–3146.

## B. STANDARD FOR GRANTING PERMANENT CUSTODY

**{¶28}** A trial court may not grant a permanent custody motion absent clear and convincing evidence to support the judgment.  The Ohio Supreme Court defined "clear and convincing evidence" as:  "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes,* 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986).  *Accord Schiebel*, 55 Ohio St.3d at 74.

**{¶29}** In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.*

## C. PERMANENT CUSTODY PRINCIPLES

{¶30} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388 (1982); *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). *Accord In re D.A.,* 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. *Id.* at ¶11. Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App.1974). Thus, the state may terminate parental rights when a child's best interest demands such termination. *D.A.* at ¶11.

{¶31} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. R.C. 2151.414(A)(1). Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151: "(A) To provide for the care, protection, and

mental and physical development of children * * *; * * * (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety."

### D. PERMANENT CUSTODY FRAMEWORK

{¶32} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state."

{¶33} Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests.

{¶34} Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. *E.g., In re T.F.,* 4th Dist. No. 07CA34, 2008–Ohio–1238, ¶23; *In re Williams,* 10th Dist. No. 02AP–924, 2002–Ohio–7205; *In re Dyal* (Aug. 9, 2001), 4th Dist. No. 01CA11. Consequently, when considering a R.C. 2151.414(B)(1)(d) permanent custody motion, the only other consideration becomes the child's best interests. A trial court need not conduct an R.C. 2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time. *Dyal; In re Berkley,* 4th Dist. Nos. 04CA12, 04CA13, and 04CA14, 2004–Ohio–4797, ¶61.

{¶35} In the case at bar, the children initially entered WCCS's temporary custody on October 5, 2009, pursuant to an ex parte emergency order. The court adjudicated the children dependent and granted WCCS temporary custody on December 9, 2009. Sixty days following the children's removal would be

December 5, 2009. According to R.C. 2151.414(B)(1)(d), a child is considered to enter temporary custody on the adjudication date or sixty days after the child's removal, whichever is earlier. Thus, for purposes of R.C. 2151.414(B)(1)(d), the children entered WCCS's temporary custody on December 5, 2009. WCCS filed its permanent custody motion on March 3, 2011. Consequently, when WCCS filed its motion, the children had been in its temporary custody for approximately fifteen months. Accordingly, because the children had been in WCCS's temporary custody for more than twelve months out of a consecutive twenty-two month period, the trial court's only other concern became the children's best interests and not whether the children could or should be returned to either parent within a reasonable time.

## E. BEST INTERESTS

{¶36} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests will be served by granting a children services agency permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure

permanent placement and whether that type of placement can be achieved without

a grant of permanent custody to the agency; and (5) whether any factors listed

under R.C. 2151.414(E)(7) to (11) apply.

R.C. 2151.414(E)(7) to (11) provide as follows:

(7) The parent has been convicted of or pleaded guilty to one of the following:

(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

**{¶37}** In the case at bar, ample competent and credible evidence supports the trial court's decision to award WCCS permanent custody.  Because appellant does not dispute the trial court's findings or decision with respect to the mother's parental rights, we focus solely upon the court's decision with respect to appellant's parental rights.  With respect to the first factor, the child's interaction and interrelationships, at the time of the hearing, appellant had not seen the children for approximately two and one-half years, due to his incarceration.  It seems unlikely, therefore, that any strong bonds existed between appellant and the children, especially considering that when appellant began his prison term, the children were approximately two- and three-years old.  The children had reasonably consistent visits with their paternal grandparents.  At the time of the permanent custody hearing, the children had been living with the foster family for

over two years and had bonded with the foster family. The youngest child was just shy of his second birthday when he entered the foster home. Thus, he has spent the majority of his young life with the foster family, not with appellant or his mother. The oldest child also spent a significant part of her young life with the foster family. She was three when she entered the foster home and remained there past her fifth birthday.

{¶38} With respect to the children's wishes, it appears the children were too young to directly express their wishes. The guardian ad litem remained neutral and did not provide a firm recommendation to the court.

{¶39} Regarding the children's custodial history, at the time of the permanent custody hearing, they had been in WCCS's temporary custody for over two years. At no point during those two years did appellant have custody of the children—obviously due to his incarceration. Throughout the majority of the two years, the children remained in one foster home and they are bonded to the foster family.

{¶40} At the time of the permanent custody hearing, appellant did not have a legally secure permanent placement for the children. He claimed that he would have one available following his release from SEPTA. However, his ability to maintain a legally secure permanent placement for the children was unproven and speculative. He received early release from prison, would remain on probation for

five years, and could potentially return to prison to complete the remainder of his four-year prison term. The paternal grandparents were considered as a placement option, but the paternal grandmother's psychologist recommended against it. Thus, the children needed a legally secure permanent placement and neither appellant nor the mother was able to provide one. WCCS investigated other relative placements but found none suitable. Consequently, the children could not achieve a legally secure permanent placement without a grant of permanent custody. The trial court observed that the children need stability, especially having lived in limbo for over two years, and that the foster family was willing to adopt the children. The trial court rationally could have determined that achieving stability for these young children, rather than subjecting them to the uncertainty of appellant's care, would serve their best interests.

## F. REASONABLE EFFORTS

{¶41} Appellant further argues that the trial court erred by awarding WCCS permanent custody when WCCS did not use reasonable efforts to reunite him with the children.

{¶42} We initially observe that appellant never argued during the trial court proceedings that WCCS failed to use reasonable efforts to reunite the children with him. Thus, absent plain error, appellant has waived the argument for purposes of appeal. *In re S.C.*, 4th Dist. No. 09CA798 and 09CA799, 2010-Ohio-3394, ¶¶39-

41; *In re T.S.*, 8th Dist. No. 92816, 2009-Ohio-5496, ¶17; *In re Slider*, 160 Ohio App.3d 159, 2005-Ohio-1457, 826 N.E.2d 356, ¶11 (4th Dist). Plain error exists when the court obviously deviated from a legal rule and when that deviation affected the outcome of the trial. *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶16; *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). In the case at bar, the trial court did not obviously deviate from a legal rule that affected the outcome of the case.

{¶43} R.C. 2151.419 does not require a trial court to enter a reasonable efforts finding when ruling on a R.C. 2151.413 permanent custody motion. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 43. Moreover, "the procedures in R.C. 2151.414 do not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody." *Id.* at ¶ 42, 862 N.E.2d 816. Nevertheless, the agency must establish that it made such efforts prior to the termination of parental rights. *Id.*

{¶44} In the case at bar, WCCS filed its permanent custody motion under R.C. 2151.413. Throughout the proceedings below, the trial court made several findings that WCCS used reasonable efforts to prevent the children's continued removal from the home. It did not, therefore, need to make an additional reasonable efforts finding when it issued its permanent custody decision.

{¶45} Furthermore, WCCS did not engage in any case planning services or seek reunification with appellant because when the children entered WCCS's temporary custody, appellant was subject to a four-year prison term, which made it impossible to provide meaningful case planning services and to attempt reunification with appellant. *In re S.D.*, 10th Dist. Nos. 08AP-546 and 08AP-575, 2009-Ohio-1047, ¶14 ("Under the circumstances, [the parent's] criminal conduct had made it difficult, if not impossible, for FCCS to provide meaningful services."); *In re A.D.*, 2nd Dist. No. 2007CA23, 2008-Ohio-2070, ¶8 ("Although [children services'] efforts were directed solely toward [the mother], such an approach was reasonable considering that [the father] was incarcerated when the children entered temporary custody and would remain incarcerated for another two and one-half years."). Thus, at the time the children entered WCCS's temporary custody, appellant had no chance of being reunified with the children for nearly four years. *In re A.D.* at ¶8. This court previously has relived a children services agency of the duty to use reasonable efforts when those efforts would be futile. *In re Keaton,* 4th Dist. Nos. 04CA2785, 04CA2788, 2004-Ohio-6210, ¶ 69, citing *In re Harmon*, Scioto App. No. 00CA2693 (Sept. 25, 2000). Obviously, when a parent is imprisoned, reunification is futile until the parent is released and obtains a stable home. Thus, because appellant was incarcerated when WCCS obtained

temporary custody and remained incarcerated up until it filed for permanent custody, reunification with appellant would have been futile.

{¶46} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the court's judgment.

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL

{¶47} In his third assignment of error, appellant asserts that trial counsel was ineffective for failing to advise the grandparents to seek custody of the children and for failing to recognize that appellee did not have a legal duty to consider placing the children with the grandparents before seeking permanent custody.

{¶48} The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (2001), citing *In re Heston* (1998), 129 Ohio App.3d 825, 827, 719 N.E.2d 93. "'Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.'" *Id.*, quoting *Heston*.

{¶49} To reverse a trial court's judgment based upon a claim of ineffective assistance, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as

to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Noling*, 98 Ohio St.3d 44, 65, 781 N.E.2d 88 (2002); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Both prongs of this test need not be analyzed, however, if a claim can be resolved under one prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000); *State v. Loza*, 71 Ohio St.3d 61, 83, 641 N.E.2d 1082 (1994).

{¶50} Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *Bradley,* paragraph two of the syllabus (stating that counsel's performance is deficient if it falls below an objective standard of reasonable representation); *State v. Peeples*, 94 Ohio App.3d 34, 44, 640 N.E.2d 208 (1994) (stating that counsel's performance is deficient if it "raise[s] compelling questions concerning the integrity of the adversarial process"). To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley,* paragraph two of the syllabus; *Strickland,* 466 U.S. at 687; *Noling; Bradley,* paragraph three of the syllabus ("To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."). When an appellate court

considers an ineffective assistance of counsel claim, the court "'will not presume prejudice but will require an affirmative showing thereof.'" *In re Z.S.,* 4th Dist. No. 10CA16, 2010–Ohio–5038, ¶35, quoting *Matter of Shelton*, Highland App. No. 818 (Mar. 16, 1993).

{¶51} In the case at bar, we cannot state that trial counsel rendered ineffective assistance of counsel. To the contrary, appellant's counsel vigorously defended appellant's parental rights. We do not know of any requirement that a parent's attorney must advise a relative to seek permanent custody when the parent faces the loss of parental rights. Even if we could state that a parent's counsel's failure to advise a non-party about filing a motion for custody constituted deficient performance, in the case at bar, we do not find any prejudice. The record demonstrates that the paternal grandmother suffered or suffers from some mental health issue that caused her treatment provider to recommend that WCCS not place the children with the paternal grandparents. There is no evidence in the record that this recommendation ever changed. Thus, even if appellant's counsel had advised the grandparents to file a custody motion, it is purely speculative—if not highly unlikely—to think that the trial court would have awarded them custody. Consequently, appellant cannot demonstrate prejudice.

{¶52} Appellant additionally asserts that counsel was ineffective for failing to recognize that the trial court did not have a duty to consider relative placement

before awarding WCCS permanent custody.  Even if this could amount to deficient performance, appellant has not offered a logical reason how such allegedly deficient performance prejudiced him.

{¶53} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J. & Harsha, J.:  Concur in Judgment and Opinion.


For the Court,

BY:  _____
          Matthew W. McFarland
          Presiding Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**